UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLOMBIA

IN THE MATTER OF THE SEARCH OF  )
#5 FOUGERE STREET  )
BASSAC GARDEN CITY COMMUNITY  )
SANGKAT TONLE BASSAC,  )
KHAN CHAMKARMON  )     Case No.
PHNOM PENH,  )
KINGDOM OF CAMBODIA  )

**Affidavit in Support of a Seizure Warrant**

I, Jose M. Gonzalez, being duly sworn state as follows:

**Introduction**

1.  I am a Special Agent (SA) with the U.S. Department of State, Diplomatic Security Service (DSS) and am assigned to the Office of Special Investigations in Arlington, Virginia. I have been employed at DSS as a Special Agent since 2012. My duties include conducting criminal investigations into violent crimes and sexual assaults involving United States government personnel stationed at diplomatic and consular missions both domestic and abroad. Prior to DSS, I was a Police Officer with the United States Park Police since 2008. My duties included preventing, detecting, and investigating violations of United States laws leading to investigations and arrests. I received training in conducting criminal investigations from the Federal Law Enforcement Training Center (FLETC). I completed two FLETC programs: the Land Management Police Training Program in 2008, and the Criminal Investigator Training Program in 2012. I have a Bachelor's degree in Finance from the State University of New York at New Paltz and a Master's degree in Human Resources from Seton Hall University.

2.  I present this affidavit in support of a search warrant for the real property and premises described as #5 Fougere Street, Bassac Garden City Community, Sangkat Tonle Bassac, Khan

1

Chamkarmon, Phnom Penh, Kingdom of Cambodia, as more fully described in Attachment A, to search for and seize items, as more fully described in Attachment B. Pursuant to Rule 41 of the Federal Rules of Criminal Procedure, I seek authority to search this property for evidence and instrumentalities related to the allegations against Isaac N. Gibbons for committing aggravated sexual abuse, sexual abuse, and abusive sexual contact with A.D. in violation of 18 U.S.C. §§ 2241, 2242, and 2244.

3. I have not included every fact I know about Isaac N. Gibbons and his illegal activities in this affidavit; rather, I have included those facts I believe are needed to demonstrate probable cause for the warrant I seek. The information in this affidavit is based on my personal knowledge and observations, on information conveyed to me by other law enforcement officials, and on my review of records, documents, and other physical evidence relevant to Isaac N. Gibbons' activities.

**Pertinent Statutes**

4. I present this affidavit in support of a search warrant to related to allegations against ISAAC N. GIBBONS for violations of 18 U.S.C. §§ 2241, 2242, and 2244. Title 18, United States Code, Section 2241(a), Aggravated Sexual Abuse by Force or Threat, provides:

> Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly causes another person to engage in a sexual act — (1) by using force against that other person or attempts to do so . . . shall be fined under this title, imprisoned for any term of years or life, or both.

Title 18, United States Code, Section 2242(1), Sexual Abuse, provides:

> Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or

> facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly — (1) causes another person to engage in a sexual act by threatening or placing that other person in fear . . . shall be fined under this titled and imprisoned for any term of years or for life.

Title 18, United States Code, Section 2246 (2) defines the term "sexual act" as "contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however, slight." Title 18, United States Code, Section 2244(a), Abusive Sexual Contact, provides:

> Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly engages in or causes sexual contact with or by another person, if so to do would violate — (1) subsection (a) or (b) of section 2241 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than ten years, or both.

Title 18, United States Code, Section 2246 (3) defines the term "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." Title 18, United States Code, Section 7(9)(B) provides that, with respect to offenses committed by or against a national of the United States, the "special maritime and territorial jurisdiction of the United States" includes "residences in foreign States and the land appurtenant or ancillary thereto, irrespective of ownership, used for purposes of those entities or used by United States personnel assigned to those missions or entities."

**Jurisdiction and Venue**

5. The residence at # 5 Fougere Street in Phnom Penh, Cambodia, has been leased by the United States government since June 2016 for use by employees stationed at the U.S. embassy for their residential use while assigned in Cambodia. It is located near, but not within, the United States Embassy compound. The U.S. government currently maintains a five-year lease of this property, which began in June 2016, and has maintained a constant security presence at the residence in the form of U.S. Embassy-employed residential guards. Isaac N. Gibbons has lived in # 5 Fougere Street in Phnom Penh, Cambodia as his residence since July 22, 2016. Isaac N. Gibbons is a U.S. national and is a U.S. government employee assigned to the U.S. Embassy in Phnom Penh, Cambodia. This residence falls under the Special Maritime and Territorial Jurisdiction of the United States, 18 U.S.C. § 7(9).

## Details of the Investigation

6. On December 23, 2017, at approximately 1230 hours, Assistant Regional Security Officer (ARSO) Blake Childs received a complaint regarding a U.S. embassy employee who had raped a woman. The complaint came by way of text messages sent from the victim, A.D., to her friend, K.S., between 0400 and 1200 hours on December 23, 2017. In the texts messages, A.D. told K.S. she had been raped by a U.S. diplomat named Isaac, provided a map with a pin point of her location indicating she was on Fougere Street in Phnom Penh, and wrote that she did not feel safe to leave because Isaac had shown her a knife and had bodyguards outside his residence. Around 1200 hours on December 23, 2017, K.S., who was in Singapore at the time, sent a message through Facebook to a friend of his, N.A., who he knew worked at the U.S. embassy in Cambodia. K.S. asked N.A if she knew an employee named Isaac; K.S. further explained that he thought Isaac had raped a friend of his and believed that his friend was still at Isaac's residence. K.S. sent the text messages to N.A. In turn, N.A. provided the text messages to ARSO Childs.

7. ARSO Childs identified Isaac as Isaac Gibbons. He instructed ARSO-Investigator (ARSO-I) Liam Forde to go with the U.S. Embassy guard force mobile patrol unit to Gibbons' residence at # 5 Fougere Street in Phnom Penh, Cambodia in order to check on A.D.'s welfare. At approximately 1300 hours, ARSO-I Forde arrived at Gibbons' residence. After Gibbons opened the front door, ARSO-I Forde asked Gibbons if a female was present in the house. Gibbons confirmed a woman was in the house; ARSO-I Forde then asked Gibbons to have her come downstairs. When the woman came down the stairs, ARSO-I Ford confirmed it was A.D. ARSO-I Forde then told Gibbons to go to the embassy to speak with ARSO Childs and Gibbons' supervisor. Before Gibbons departed the residence, ARSO-I Forde obtained Gibbons' permission to use the living room of the residence to speak with A.D. After Gibbons left the residence for the embassy, ARSO-I Forde interviewed A.D. in the living room of Gibbon's residence. On December 25, 2017, DSS SA Douglas E. Rueff also interviewed A.D. through a video teleconference.

8. A.D., a Filipino national, said that on December 22, 2017, she met several friends at the Deva Lounge in Phnom Penh. A.D. met Gibbons at the bar, where she consumed three to four alcoholic beverages before leaving. A.D. described that Gibbons was wearing office attire; she does not recall the color of his shirt, but she remembers him wearing a greyish light suit and a red and cream tie. The group of friends, including A.D. and Gibbons, then went to another bar named Club 55, where she drank approximately two more alcoholic beverages. A.D. expressed that her memory of the sexual assault was fragmented. She also expressed that she was "creeped out" that she could not remember the details of the alleged assault because she typically drank much more alcohol on a night out than she did on December 22, 2017.

9.      A.D. recalled that she and Gibbons departed Club 55 together around 0100 hours, but she did not recall how they got from the club to Gibbons' residence or upstairs into the bedroom. She remembers, however, asking Gibbons, "Where are we?" as they passed by the guard. A.D. recalls that Gibbons showed her a folding knife eight to ten inches long when the blade was extended and told her that he had guns in the house. A.D. explained that she remembers Gibbons asking her to take off her clothes and being on top of her. She recalls telling him "I do not want to have sex with you," "no," and "stop" multiple times. She also recalls trying to push Gibbons off of her with her forearm. Despite A.D. expressing that she did not want to have sex, Gibbons penetrated her vaginally with his penis. While Gibbons penetrated A.D., she told Gibbons, "Don't do this; I don't want to be damaged emotionally." A.D. further stated that Gibbons used a condom.

10.     A.D. woke up at Gibbons' residence on December 23, 2017 at approximately 0700 hours. After she woke up, Gibbons climbed on top of her and attempted to have sex with her again, but A.D. talked him out of it. At some point after 0700, Gibbons took the sheets off the bed. Gibbons also told A.D. that he wanted her to take a shower. A.D. initially refused, but Gibbons told her she needed to take a shower because "that's what humans do." After taking a shower, A.D. asked Gibbons what she should do with the towel she used. A.D. said Gibbons instructed her to put the wet towel on top of the bedsheets he had taken off the bed. A.D. is uncertain whether or not Gibbons washed the sheets. A.D. expressed that she attempted to leave Gibbons' residence several times, but Gibbons kept telling her to stay and she did not feel free to leave because there were guards outside his residence.

11.     Initial investigation corroborated several aspects of A.D.'s account of being raped. A.D. consented to a medical exam at the U.S. embassy. On December 23, 2017, the U.S. Embassy

Regional Medical Officer, Scott Fleming, examined A.D. and completed a sexual assault evidence collection kit. Fleming stated that he found evidence of forcible penetration during his examination as shown through pain inserting the vaginal speculum superior and swelling and redness of introitus. The medical provider also noted that A.D. had showered, douched and used mouthwash prior to the exam.

12.     ARSO Childs also interviewed U.S. Embassy Phnom Penh residential guard Sour Somony. Sour Somony was at his post at Gibbons house between 2300 hours on December 22, 2017 and 0700 hours on December 23, 2017. Somony stated that at about 0210 hours on December 23, 2017, Gibbons returned home via a Tuk-Tuk (a Cambodian taxi consisting of a carriage attached to a moped). Somony said Gibbons was accompanied by a female that Somony had not seen before. Somony stated it appeared to him that the female did not want to get out of the Tuk-Tuk; Somony saw Gibbons talk to her for one to two minutes and the woman then follow Gibbons into the house. This was the first time he had ever seen the visitor. ARSO Childs and Somony later confirmed through the guard's logbook that Gibbons' actual arrival time with the unknown female was 0157 hours on December 23, 2017.

## Conclusion

13.     Therefore, there is probable cause to support that ISAAC N. GIBBONS violated 18 U.S.C. § 2241, which makes it a crime to knowingly cause another person to engage in a sexual act by using force against that other person within the Special Maritime and Territorial Jurisdiction of the United States; 18 U.S.C. § 2242, which makes it a crime to knowingly engage in a sexual act with another person by threatening or placing that other person in fear within the Special Maritime and Territorial Jurisdiction of the United States; and 18 U.S.C. § 2244, which makes it a crime to knowingly engage in or cause sexual contact with or by another person, if so

7

to do would violate subsection (a) or (b) of section 2241 of this title had the sexual contact been a sexual act, within the Special Maritime and Territorial Jurisdiction of the United States. Moreover, there is probable cause to support that evidence of this crime, as fully described in Attachment B, is located in the residence of Isaac N. Gibbons, as fully described in Attachment A.

                                        Respectfully submitted,

                                        Jose M. Gonzalez
                                        Special Agent
                                        United States Department of State
                                        Diplomatic Security Service

Subscribed and sworn to before me this 29th day of December 2017.

_____
The Honorable Robin Meriweather
United States Magistrate Judge

## ATTACHMENT A

### The Premises to be Searched

A residence located at # 5 Fougere Street in Bassac Garden City Community, Sangkat Tonle Bassac, Khan Chamkarmorn, Phnom Penh, Kingdom of Cambodia. It is located near, but not within, the United States Embassy compound. This structure is a two-story single residence occupying approximately 1,700 square feet. It sits at or near 11.541451 degrees latitude and 104.930367 degrees longitude. The property is surrounded by a fence with a vehicle gate and a pedestrian gate in front. The pedestrian gate at the front of the property is marked with F-5. The property is adjoined to its neighbors by a wall fence on the remaining three sides; and the property is surrounded by a white, metal fence topped with razor wire. The first floor contains a living room, a guest bathroom, a wooden staircase, a dining room, a kitchen, and a storage/laundry room containing a toilet. The second floor contains a family room with a balcony and three bedrooms with attached bathrooms. Below is a photo of the residence:



## ATTACHMENT B

### The Items to be Seized

The items to be seized from the premises listed in Attachment A include:

1. Towels and bedding materials, including but not limited to sheets, pillow cases, comforters or linens.

2. Any and all items or surfaces found to contain possible biological evidence.

3. Any and all condoms including wrappers and packaging.

4. Any and all douche devices and packaging.

5. Any pharmaceuticals, whether legal or illegal, and associated containers.

6. Clothing to include grey suits, men's dress shirts, red and cream colored neck ties, and any soiled or worn clothing and undergarments.

7. Evidence of an assault.

8. Any weapons, including knives and firearms.

9. Alcoholic Beverages, illegal Substances, containers, and receipts of purchase of alcoholic beverages.